IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BIG BLUE CAPITAL PARTNERS,
LLC,

       Plaintiff,

  v.

RECONTRUST COMPANY, N.A.;
THE BANK OF NEW YORK MELLON
FKA THE BANK OF NEW YORK,
as trustee for the benefit
of CWALT, INC., alternative
loan trust 2006-45T1 mortgage
pass through certificates,
series 2006-45T1; and MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.;

       Defendants.

6:11-cv-1412-TC
OPINION AND ORDER

COFFIN, Magistrate Judge:

Defendants ReconTrust Company, N.A. ("ReconTrust"), the Bank of New York Mellon fka the Bank of New York ("BNYM"), and Mortgage Electronic Registration Systems, Inc. ("MERS") move to dismiss plaintiff Big Blue Capital Partners, LLC's complaint pursuant to

Page 1 - OPINION AND ORDER

Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).  The motion
has been fully briefed and this court heard oral argument on the
matter.[1]  As set forth below, the motion to dismiss is allowed due
to plaintiff's lack of standing.

Judge Aiken recently dismissed a similar case for lack of
standing.  Big Blue Capital Partners, LLC v. ReconTrust Company
N.A., Case No. 6: 11-cv-6368AA.  That case and the present case
essentially have the same parties, very similar facts and the same
attorneys.  This court agrees with the reasoning of Judge Aiken's
opinion and, as discussed in more detail below, it is appropriate
to dismiss the present case for a lack of standing.

### BACKGROUND

In October, 2006, Daryl and Janet Richardson[2] took out a loan
from Countrywide Home Loans ("Countrywide") in the amount of
$1,500,000, to purchase  property (the "Property").  Pursuant to
this transaction, the Richardsons executed a promissory note (the
"Note") in favor of Countrywide.  The Note was secured by a trust
deed (the "Deed of Trust"), which lists Countrywide as the lender
and MERS as the beneficiary.  The Deed of Trust was filed in
Douglas County, Oregon.

Pursuant to the Deed of Trust, the Richardsons agreed to make
monthly mortgage payments as required under the Note; the

---

[1]Defendants have also filed requests (#13, #18) for judicial
notice which are not opposed and are allowed.  A motion (#25)to
withdraw as counsel for plaintiff was recently filed and is
allowed.

[2] The Richardsons  are not a party to this litigation.

Richardsons also agreed that they would be in default, and subject to foreclosure, if they failed to make such payments. In addition, the Deed of Trust required the Richardsons to obtain approval, in writing, before selling or transferring their interest in the Property.

The Richardsons stopped making the required loan payments two years ago and defaulted. MERS thereafter executed and caused to be recorded an Assignment of Deed of Trust to BNYM, in care of BAC Home Loan Servicing LP, in the Douglass County Records Office. BNYM, through BAC Home Loan Servcing LP, executed and caused to be recorded an Appointment of Successor Trustee, appointing ReconTrust, in the Douglass County Record's Office. ReconTrust then commenced non-judicial foreclosure proceedings by recording a Notice of Default and Election to Sell on October 27, 2010, in the Douglass County Records Office. ReconTrust cancelled and withdrew the Notice of Default and Election to Sell on February 24, 2011. ReconTrust again commenced non-judicial foreclosure proceedings, by recording a Notice of Default and Election to Sell on June 10, 2011, in the Douglass County Record's Office. This Notice of Default set the foreclosure sale for October 17, 2011, but the sale has not yet occurred.

On October 17, 2011, the same day on which the Trustee's Sale was to occur, the Richardsons executed a quitclaim deed purporting to convey their interest in the Property to plaintiff. Plaintiff is a limited liability company that was created under the laws of Ohio. Although the Deed of Trust requires lender approval for this

Page 3 - OPINION AND ORDER

sale, plaintiff does not allege that it or the Richardsons sought or obtained such approval.

On October 18, 2011 - one day after acquiring the property by quitclaim deed - plaintiff filed a complaint in Douglas County Circuit Court. Plaintiff asserted several claims against defendants arising out of defendants' alleged failure to comply with the non-judicial foreclosure procedures outlined in the Oregon Trust Deed Act ("OTDA"). Defendants removed the action to this court on the basis of diversity jurisdiction.

## STANDARDS

Where the court lacks subject-matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(b)(1). A challenge to standing is appropriately raised pursuant to Fed. R. Civ. P. 12(b)(1). Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010). The party who seeks to invoke the subject-matter jurisdiction of the court has the burden of establishing that such jurisdiction exists. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). In such instances, the court may hear evidence regarding subject-matter jurisdiction and resolve factual disputes where necessary; however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the [court] from evaluating for itself the merits of jurisdictional claims." Kingman Reef Atoll Invs., LLC v. United States, 541 F.3d 1189, 1195 (9th Cir. 2008).

Page 4 - OPINION AND ORDER

**DISCUSSION**

Defendants assert that plaintiff's complaint must be dismissed for lack of subject-matter jurisdiction as plaintiff lacks both Article III standing and prudential standing.

The standing jurisprudence of federal courts "contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, [and] prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 11 (2004) (citations and internal quotations omitted).

A. Article III Standing

The "irreducible constitutional minimum of standing" requires three elements: 1) plaintiff must have suffered an "injury in fact"; 2) the injury must be "fairly traceable to the challenged action of the defendant"; and 3) "it must be likely . . . that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560-61 (citations and internal quotations omitted).

Defendants contend that plaintiff lacks standing because its "injury" resulted from its own decision to purchase an encumbered property from a defaulting borrower. Defendants argue that this self-inflicted injury does not satisfy the traceability requirements of Article III. Id. at 10 (citing Pennsylvania v. New Jersey, 426 U.S. 660, 664 (1976)).

Plaintiff asserts that as the owner of the property, it will imminently suffer the loss of property for which it has paid consideration and the fact that plaintiff was aware of the imminent

Page 5 - OPINION AND ORDER

injury in no way prevents plaintiff from suffering it.    Plaintiff
then argues that defendants' reliance on Pennsylvania v. New Jersey
is misplaced because the injury is not being inflicted upon
plaintiff by plaintiff's actions, but by the wrongful foreclosure
process initiated and maintained by defendants.

It is undisputed that plaintiff knowingly purchased the
Property after the Richardsons defaulted on the Note and defendants
initiated non-judicial foreclosure proceedings.    It is also
undisputed that plaintiff had no involvement whatsoever in the
lending process and is not named in, or a party to, any of the loan
or foreclosure documents.    Moreover, the record reveals that the
Richardsons took out the loan for the Property in their individual
capacities and for their use.

As set forth above, the allegations in plaintiff's complaint
all stem from defendants' response to the Richardsons inability to
make the requisite payments under the Note. As such, plaintiff did
not suffer an injury that is fairly traceable to the challenged
actions of defendants. See AOM Group, LLC v. Downey Sav. & Loan
Ass'n, F.A., 2010 WL 3342024, *1 n.1 (D.Ariz. Aug. 25, 2010)
(company that purchased properties from borrowers in default in
order to challenge the statutory non-judicial foreclosure
proceedings lacked constitutional standing, citing Fleck & Assocs.,
Inc. v. City of Phoenix, 471 F.3d 1100, 1104 (9th Cir. 2006)); AOM
Group LLC v. Provident Funding Assocs. LP, 2010 WL 3342020, *1
(D.Ariz. Aug. 25, 2010) (same).    To the extent that plaintiff
suffered an injury, it was due to plaintiff's own actions in

Page 6 - OPINION AND ORDER

purchasing the Property after non-judicial foreclosure proceedings had been commenced.[3]

## B. Prudential Standing

Even if plaintiff was able to meet the "irreducible constitutional minimum of standing" mandated by Article III, dismissal of this action would be appropriate due to prudential considerations.

The "prudential component of standing precludes the exercise of [subject-matter jursidiction] even where the Constitution's 'irreducible minimum' requirements have been met." Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1108 (9th Cir. 2003); see also Allen v. Wright, 468 U.S. 737, 751 (1984) (the court lacks subject-matter jurisdiction, due to prudential limitations, where a plaintiff "rais[es] another person's legal rights" or where a "complaint [does not] fall within the zone of interests protected by the law invoked").

Defendants assert that this action must be dismissed because plaintiff's claims are premised on the legal rights or interests of the Richardsons, a non-party to this suit. In addition, plaintiff contends that the OTDA was only intended to protect those who have a duty to repay the Note and, as such, plaintiff does not come

---

[3]Moreover, it appears that plaintiff's sole purpose in initiating this action was to frustrate and delay non-judicial foreclosures under the OTDA in order to exact a settlement from the lender; plaintiff capitalizes on this ruse by purchasing properties, at a fraction of their value, from borrowers who have already defaulted on their loan obligations.

within the "zone of interests" that the OTDA was enacted to protect.

Plaintiff does not respond to defendants' argument relating to the "zone of interests" protected by the OTDA, but does contend that this action is not barred by prudential considerations because plaintiff is not seeking to exercise the rights of any third party and is seeking to exercise its own right as the owner of the Property.

### i. Third-Party Standing

"As a general rule, a third-party does not having standing to bring a claim asserting a violation of someone else's rights." Martin v. Cal. Dep't of Veterans Affairs, 560 F.3d 1042, 1050 (9th Cir. 2009) (citing Powers v. Ohio, 499 U.S. 400, 410 (1991)). This rule exists to avoid "the adjudication of rights which those not before the [c]ourt may not wish to assert, and [to ensure] that the most effective advocate of the rights at issue is present to champion them." Elk Grove, 542 U.S. at 15 n.7 (citations and internal quotations omitted). The rule applies even when the very same allegedly illegal act that affects the litigant also affects a third party. See United States v. Payner, 447 U.S. 727, 731-732 (1980). While there are a number of exceptions to this general rule, plaintiff does not argue, and this court does not find, that any of these exceptions are applicable here.

Plaintiff's claims are not premised upon its own rights, but on the rights of a third-party. As discussed above, plaintiff was

Page 8 - OPINION AND ORDER

not the original borrower and had no involvement in the lending process. Although plaintiff purports to have acquired the Property, plaintiff does not allege that it is a party to the Note or Deed of Trust. Moreover, under the terms of the Deed of Trust, the Richardsons were required to have written permission from the lender, or its successors and assigns, in order to transfer or sell their interest in the Property, which plaintiff does not allege occurred in this case. Accordingly, the Richardsons, rather than plaintiff, remain the parties required to repay the Note. As such, defendants' allegedly wrongful non-judicial foreclosure proceedings infringed upon the Richardsons' rights. Plaintiff's complaint therefore asserts the rights of a third-party rather than its own. See HPG Corp. v. Aurora Loan Servs., LLC, 436 B.R. 569, 580 (E.D.Cal. 2010) (corporation did not have prudential standing to pursue claims against the lender, on behalf of homeowners in default on their loan obligations, based upon lender's alleged failure to follow statutory procedures when conducting non-judicial foreclosures). The fact that plaintiff interjected itself into defendants' non-judicial foreclosure, via a real estate purchase contract, in order to profit from the Richarsdsons' unfortunate circumstances cannot remedy this defect.

Plaintiff has also failed to demonstrate any hindrance to the Richardsons' ability to protect their own interests. Rather, the influx of cases arising out of foreclosures around the country demonstrates that homeowners facing foreclosure are capable of asserting their own rights. See Bertrand v. Suntrust Mortg., Inc.,

Page 9 - OPINION AND ORDER

2011 WL 1113421, *1 (D.Or. March 23, 2011) (noting the "veritable
tsunami of investigation into and litigation over mortgage
foreclosure practices"). The fact that individuals in foreclosure
proceedings may be unable to hire counsel is not "the type of
hindrance necessary to allow another to assert the indigent
[party's] rights." Kowalski v. Tesmer, 543 U.S. 125, 132 (2004).

## ii. "Zone of Interests" Protected by the OTDA

In assessing the "zone of interests" protected by a statute,
a court need not "inquire whether there has been a congressional
intent to benefit the would-be plaintiff," but instead must
determine only whether the plaintiff's interests are among those
"arguably ... to be protected" by the statutory provision. Nat'l
Credit Union v. First Nat'l Bank & Trust Co., 552 U.S. 478, 489
(1998). As such, the "zone of interests" test "is not meant to be
demanding." Clarke v. Secs. Indus. Ass'n, 479 U.S. 388, 399-400
(1987).

Despite this low threshold, plaintiff does not fall within the
"zone of interests" protected by the OTDA. The OTDA was enacted
"to protect [borrowers] from the unauthorized foreclosure and
wrongful sale of property, while at the same time providing
creditors with a quick and efficient remedy." Staffordshire Inv.,
Inc. v. Cal-Western Reconveyance Corp., 209 Or.App. 528, 542, 149
P.3d 150 (2006). To accomplish this goal, the OTDA requires that
the creditor strictly comply with its provisions in order to
effectuate non-judicial foreclosure. Id.; James v. Recontrust Co.,

Page 10 - OPINION AND ORDER

2012 WL 653871, *5 (D.Or. Feb. 29, 2012); see also Or. Rev. Stat.
§§ 86.705-86.795.

In short, there is nothing in the OTDA that even arguably was
intended to protect corporate entities, such as plaintiff, that
purchase properties already in default and seek to profit by
extracting a settlement from the creditor. Therefore, this court
lacks subject-matter jurisdiction because plaintiff's interests do
not fall within the purview of the OTDA.

## CONCLUSION

The motion(#25) to withdraw as counsel for plaintiff is
allowed. Defendants' requests for judicial notice (#13, #18) are
allowed. Defendants' Motion to Dismiss (#11) is also allowed and
this action is dismissed.

IT IS SO ORDERED.

Dated this $\underline{21}$ day of May, 2012.

Thomas M. Coffin
United States Magistrate Judge